**PATERSON, ZOCHONIS (U.K.) LTD. et al., Plaintiffs,**

v.

**COMPANIA UNITED ARROW, S.A., Sea Queen Lines, Sea Queen Corp., Ltd., China Ocean Shipping Company and Mitsui O.S.K. Lines, Ltd., Defendants.**

Nos. 77 Civ. 4470 (LBS), 77 Civ. 5129 (LBS), 78 Civ. 1064 (LBS), 78 Civ. 1138 (LBS), 78 Civ. 1196 (LBS) and 78 Civ. 1197 (LBS).

United States District Court, S. D. New York.

Jan. 30, 1980.

See also, D.C., 493 F.Supp. 626.

Donovan, Maloof, Walsh & Kennedy, Richard E. Repetto, New York City, for plaintiffs in 77 Civ. 4470, 78 Civ. 1196, 78 Civ. 1197 and 77 Civ. 5129.

Crowell, Rouse & Varian, New York City, for plaintiff Francis R. Matera in 78 Civ. 1138.

Brauner, Baron, Rosenzweig, Kliger, Sparber & Bauman, Mel P. Barkan, New York City, for defendant China Ocean Shipping Co.

SAND, District Judge.

These consolidated actions grow out of a shipment of cargo from Foochow and Dairen in The People's Republic of China ("PRC") to Lagos, Nigeria. The cargo was shipped from PRC to Hong Kong, where it was transshipped and loaded aboard the M/V SEA QUEEN I ("Sea Queen"). The Sea Queen sank in the South Atlantic off the coast of South Africa on March 20, 1977.

Plaintiff cargo interests, all of whom are foreign corporations,[1] seek to recover their losses from Mitsui O.S.K. Lines, Ltd. ("Mitsui"), a Japanese corporation, and China Ocean Shipping Company ("COSCO"), an entity organized under the laws of PRC which issued to plaintiffs "through bills of lading" covering the shipment of the goods

---

1. There are a total of forty plaintiffs in the five actions involved in these motions. All of the plaintiffs are either foreign corporations or other foreign business entities.

from PRC to Nigeria.[2] Separate "memo" bills of lading were issued to COSCO by Sea Queen at the time of transshipment. Currently before the Court are plaintiffs' motion to enter a default judgment against COSCO, and COSCO's motion to dismiss the claims against it on the ground, *inter alia*, that it is immune from the jurisdiction of this Court under the Foreign Sovereign Immunities Act of 1976.[3] 28 U.S.C. § 1602 *et seq.* ("Act"). For the reasons stated herein, the Court concludes that COSCO is immune in this particular case and the complaints in 77 Civ. 4470, 77 Civ. 5129, 78 Civ. 1138, 78 Civ. 1196 and 78 Civ. 1197 are dismissed with prejudice insofar as they relate to COSCO. Plaintiffs' motion for a default judgment is denied.

Except in circumstances specifically provided for in the Act, foreign states, including "agencies or instrumentalities" of foreign states, are immune from the jurisdiction of federal or state courts. 28 U.S.C. §§ 1603, 1604. It seems clear, and plaintiffs do not dispute the point, that COSCO, a Chinese corporation controlled by the Ministry of Communications and ultimately by the PRC State Council, is in fact an agency or instrumentality of a foreign state. The sole question then, is whether the circumstances in this case are such that COSCO is not immune under the Act. 28 U.S.C. § 1605. Plaintiffs' contentions concerning the extent of COSCO's contacts with the United States in general and New York in particular are relevant only insofar as they bear on that question. *See Harris v. VAO Intourist*, D.C., 481 F.Supp. 1056 (E.D.N.Y. 1979) (concluding that the inquiry required under the Act is distinct from the jurisdictional considerations set forth in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

Only two of the Act's specific exceptions are conceivably relevant here. The first is the complex of commercial activity exceptions encompassed in 28 U.S.C. § 1605(a)(2); the second is the waiver exception contained in 28 U.S.C. § 1605(a)(1). Generally speaking, foreign states are not immune from suits in United States courts insofar as their commercial activities are concerned. In order for the Act's commercial activity exception to apply, however, a suit must be based either upon the commercial activity of a foreign state carried on in the United States, an act performed in the United States by a foreign state in connection with its commercial activity elsewhere or a commercial act of a foreign state outside the United States which causes a "direct effect" in the United States. There is no question that this suit is not *based* upon either COSCO's commercial activity in the United States, whatever its scope,[4] or upon any act it performed in this country. Moreover, plaintiffs point to no direct effect on the United States caused by the events surrounding these lawsuits, and the Court concludes that there were no such effects. *See Harris v. VAO Intourist, supra*, and the cases cited therein. The Act's commercial activity exceptions thus do not apply here.

Plaintiffs urge that COSCO has waived its sovereign immunity by filing and executing an "Application for Certificate of Financial Responsibility" (Oil Pollution) with the Federal Maritime Commission ("FMC"), by appointing Kerr Steamship Company, ("Kerr") as its agent for service of process in the United States, and by

---

**2.** This litigation commenced when the owner of the Sea Queen, Compania United Arrows, S.A., filed its complaint for limitation of or exoneration from liability. The cargo claimants subsequently filed their complaints, and the complaint against COSCO was filed in March, 1978. The "Sea Queen defendants", Compania United Arrows, S.A., Sea Queen Lines and Sea Queen Corp. Ltd., are no longer parties to this action. Counsel who originally appeared for the Sea Queen defendants sought and was granted leave to withdraw from the case. After notice, default judgment was entered in April and May of 1979.

**3.** Mitsui O.S.K. Lines, Ltd. has also moved to dismiss the complaints against it. That motion will be dealt with in a separate opinion.

**4.** Both parties agree that COSCO's activities in this country were extremely limited at the time this lawsuit was filed, although there is disagreement as to the jurisdictional significance of other PRC activities. The Court has serious doubts, however, as to whether it could exercise jurisdiction in this case even if COSCO were not immune.

accepting in connection with the Hong Kong transshipment Sea Queen bills of lading which contained a provision giving Sea Queen the right to litigate claims arising under the bills in New York ("New York choice of forum provision"). After considering all of the papers submitted by both sides and after oral argument and reargument, the Court concludes that these contentions are without merit and that COSCO has not waived its immunity from the jurisdiction of this Court.

The FMC applications[5] referred to by plaintiffs were filed pursuant to the Federal Water Pollution Control Act, 33 U.S.C. § 1321, and FMC regulations in order to permit COSCO's ships to transit the Panama Canal or call at a United States port. COSCO was required as a part of those applications to designate "a person in the United States as its agent for service of process for the purposes of" the Water Pollution Control Act and FMC regulations, 46 C.F.R. § 542.15(a). In order to comply with that requirement, COSCO executed a Power of Attorney on February 25, 1977 designating Kerr as its agent for service of process. After examining a copy of that document, the Court is convinced that it was executed solely for the purpose of complying with FMC regulations and that it was not intended as a waiver of sovereign immunity in matters unrelated to the Water Pollution Act. Even if we look beyond the written designation, the nature of COSCO's relationship with Kerr belies the assertion that COSCO either explicitly or implicitly waived its sovereign immunity as a result of that relationship.[6] *See Harris v. VAO*

*Intourist, supra,* (the Act's "legislative history suggests that implied waivers by commercial action are not consonant with [its] purposes; implicit waivers are reflected in actions relating to adjudication . . .").

COSCO's acceptance of the Sea Queen bills of lading containing the New York choice of forum clause is a similarly unconvincing basis for the argument that COSCO waived its sovereign immunity insofar as plaintiffs are concerned. Issued to COSCO's agents at the time of transshipment, the original Sea Queen "memo" bills listed the "holder[s] of the original [COSCO] through" bills as consignees, and were ultimately forwarded to Sea Queen's agents in Nigeria with instructions to surrender the cargo to the holders of the COSCO bills. The Sea Queen bills, which were thus never possessed by or issued to the plaintiffs, were intended merely as receipts evidencing the fact that the cargo described in the COSCO bills had been loaded aboard the Sea Queen.

Given these facts, the choice of forum provisions in the Sea Queen bills arguably constitute a waiver of immunity in a COSCO/Sea Queen controversy.[7] They were obviously not intended, however, to govern contractual relations between COSCO and the cargo interest plaintiffs, particularly since the COSCO bills issued to plaintiffs specifically provided for resolution of all controversies in PRC.[8] COSCO could not reasonably have expected that accepting the Sea Queen bills would constitute a waiver of its sovereign immunity against plaintiffs, and this Court will not find such

---

5. In addition to the application referred to above, which was filed on February 25, 1977, Kerr also filed an "Application for Certificate of Financial Responsibility (Water Pollution)" on COSCO's behalf on January 4, 1979. The circumstances surrounding this latter application were identical to those surrounding the first.

6. The COSCO–Kerr relationship is described in the affidavit of Richard Motta, Kerr's vice-president. Although Kerr is referred to as COSCO's general agent in the FMC applications, Mr. Motta claims that COSCO does no business in New York and that Kerr has never solicited business for, or entered into any contracts on

behalf of, COSCO in New York. No COSCO ship has ever entered New York.

7. Although such a controversy was originally involved in this litigation, the default of the Sea Queen defendants moots the question. *See* note 2, *supra.*

8. This provision of the COSCO bills does not, of course, constitute a waiver of COSCO's sovereign immunity. *See* H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 13, U.S.Code Cong. & Admin.News 1976, p. 6604, quoted in *Harris v. VAO Intourist, supra,* "courts have found . . . [implicit] waivers in cases where a foreign state has agreed to arbitration *in another coun-*

a waiver in provisions of receipt-like bills of lading neither issued by COSCO nor possessed by plaintiffs.

■ In light of both our finding on the immunity issue and all of the other circumstances surrounding this case, particularly the fact that diplomatic relations between this country and PRC had yet to be established at the time this lawsuit was commenced, plaintiffs' motion for a default judgment is denied despite COSCO's technical default. Our conclusion that COSCO is immune also makes it unnecessary for us to reach numerous other contentions raised by the parties, including plaintiffs' claim that they will be left to an uncertain and perhaps by our standards unfortunate fate if forced to litigate in PRC. The question of whether appropriate remedies are available in PRC is not relevant under the Act and we do not address it here.[9]

The complaints against COSCO are dismissed, and plaintiffs' motion is denied.

SO ORDERED.

## APPENDIX

IN ACCORDANCE WITH THE FUNDAMENTAL PRINCIPLES RELATING TO PEOPLE'S COURTS STIPULATED IN THE CONSTITUTION OF PEOPLE'S REPUBLIC OF CHINA AND LAW ON ORGANIZATION OF PEOPLE'S COURTS OF PEOPLE'S REPUBLIC OF CHINA, THE PRESENT PRACTICE CONCERNING PROCEDURES OF PEOPLE'S COURTS IN DEALING WITH FOREIGN TRADE AND MARITIME LITIGATIONS IS AS FOLLOWS:

1) A FOREIGN PARTY' IS REQUIRED TO APPOINT A CHINESE ATTORNEY AS HIS LEGAL AGENT. IN GENERAL, LEGAL COUNSEL SERVICE OF THE CCPIT WILL BE REQUESTED BY THE SAID FOREIGN PARTY TO MAKE RECOMMENDATION FOR SUCH APPOINTMENT.

2) THE CHINESE ATTORNEY SHALL SUBMIT TO THE COMPETENT COURT THE STATEMENT OF CLAIM ON BEHALF OF THE PLAINTIFF AND FORWARD TO THE DEFENDANT A COPY OF THE STATEMENT OF CLAIM REGISTERED FOR RECEIPT WITH THE OFFICIAL STAMP BY THE COURT.

3) UPON RECEIPT OF THE COPY OF THE STATEMENT OF CLAIM THE DEFENDANT SHALL, WITHIN 60 DAYS, APPOINT A CHINESE ATTORNEY TO SUBMIT THE STATEMENT OF DEFENCE TO THE COURT.

4) THE COURT SHALL SET UP A TRIBUNAL OF JUDGES SITTING IN A BODY TO CONDUCT THE PROCEEDINGS AND TO HEAR THE CASE IN OPEN SESSIONS. PARTIES OR THEIR RESPECTIVE REPRESENTATIVES SHALL APPEAR AT THE HEARING ON TIME ON THE DATE FIXED BY THE COURT. IF ONE OF THE PARTIES OR HIS REPRESENTATIVE FAILS TO APPEAR AT THE HEARING WITHOUT SHOWING SUFFICIENT CAUSE FOR SUCH FAILURE, THE COURT MAY MAKE JUDGMENT BY DEFAULT. ONE OF THE PARTIES MAY REQUEST THE COURT TO DEFER THE HEARING, IF HE HAS SUFFICIENT LEGITIMATE CAUSE.

5) EACH OF THE PARTIES MAY CONTACT HIS CHINESE ATTORNEY DIS-

---

*try or* . . . *has agreed that the law of a particular country should govern a contract.* . . .*" (emphasis added).*

**9.** At oral argument, questions concerning the nature of PRC procedures for resolving disputes of this kind were raised in connection with COSCO's alternative argument that the complaints against it should be dismissed on the ground of *forum non conveniens.* In response to an inquiry by the Court, COSCO's attorney communicated with both his client and the China Council for the Promotion of International Trade ("CCPIT") and received a

telex describing those procedures as well as a copy of the Organic Law for People's Courts effective January 1, 1980. COSCO's attorney has supplied a copy of each and a translation of the latter.

These questions have been mooted by the Court's conclusion on the sovereign immunity issue. The CCPIT telex describing PRC procedures is included in an appendix to this opinion, however, because the Court believes that this may be one of the first occasions that such information has been made generally available.

CUSSING QUESTIONS RELATING TO THE LITIGATION CASE DIRECTLY OR THROUGH HIS FOREIGN ATTORNEY.

6) EACH PARTY'S CHINESE ATTORNEY IS TO APPEAR AT THE HEARING TO MAKE DEFENCE ON BEHALF OF HIS CLIENT.

7) BEFORE THE HEARING IS HELD, BOTH PARTIES MAY SETTLE THE CASE AMICABLY DIRECTLY OR THROUGH THEIR RESPECTIVE CHINESE ATTORNEYS. IF AN AMICABLE SETTLEMENT IS REACHED, THE PLAINTIFF MAY APPLY TO THE COURT FOR THE WITHDRAWAL OF THE LITIGATION. IF AN AMICABLE SETTLEMENT FAILS, THE COURT WILL PROCEED WITH HEARINGS AND MAKE JUDGMENT IN ACCORDANCE WITH THE LAW.

8) ANY PARTY DISAGREEING WITH THE JUDGMENT OF THE COURT OF FIRST INSTANCE MAY LODGE AN APPEAL TO A HIGHER COURT.

A COPY OF THE LAW ON THE ORGANIZATION OF THE PEOPLE'S COURTS IS BEING AIRMAILED TO YOU.