Ramon CASTRO, Maria Del Socorro Castro, Martha Elena Castro, Bertha Alicia Castro, Socorro Guadalupe Castro, Jesus Ramon Castro, and Rose Isela Castro, Individually and as the survivors of Joe Raymond Castro and Gregorio Castro

v.

**SAUDI ARABIA.**

No. DR–79–CA–05.

United States District Court,
W. D. Texas,
Del Rio Division.

June 12, 1980.

V. F. Knickerbocker, Knickerbocker, Abrams & Cowan, Eagle Pass, Tex., Broadus A. Spivey and Paul E. Knisely, Spivey & Grigg, Austin, Tex., for plaintiffs.

Doran, Gulley & Etzel, Haygood Gulley, Del Rio, Tex., for defendant.

ORDER DECLARING DEFAULT JUDG-
MENT VOID FOR LACK OF JURIS-
DICTION AND DISMISSING AC-
TION

SUTTLE, Senior District Judge.

Only the plaintiffs were represented at the evidentiary hearing on the plaintiffs' motion for default judgment. Because the plaintiffs' evidence indicated that Saudi Arabia's failure to answer was wilful, and because the court hesitated to vigorously engage in the role of adversary on behalf of a wilfully defaulting defendant, the court was satisfied with a minimum of evidence in support of the plaintiffs' claims. 28 U.S.C. § 1608(e). Even so, the court entered the default judgment with some measure of misgiving. Transcript I at 89–92, 109.[1] The default judgment was signed on November 8, 1979, in San Antonio, but not filed until the clerk in Del Rio received it on November 10, 1979. Meanwhile, on November 9, the defendant filed its answer, specifically pleading the defense of sovereign immunity.

On April 22–23, 1980, this court held a second evidentiary hearing, this time with both plaintiffs and the defendant present. The court received evidence and entertained oral argument on the defendant's motion to have the default judgment declared void for lack of jurisdiction and on the defendant's motion for new trial. After making a full inquiry into the jurisdictional issue, and after carefully considering the oral argument offered at the adversary proceeding and the written briefs and memorandum submitted by both sides, the court concludes that it does not have subject matter or personal jurisdiction of the action. Consequently, the default judgment must be set aside as void and the action dismissed. In the alter-native, the court finds from the record and from the evidence presented at the proceeding that the defendant's motion for new trial should be granted.

■ Even though the court has previously entered a default judgment against Saudi Arabia, it now reexamines the issue of subject matter jurisdiction, for without subject matter jurisdiction the default judgment is a nullity. *Nishimatsu Construction Co. v. Houston Nat. Bank,* 515 F.2d 1200, 1205 (5th Cir. 1975); Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 2695 p. 326.

The statute conferring jurisdiction on this court makes the absence of sovereign immunity a prerequisite to both subject matter and personal jurisdiction. 28 U.S.C. § 1330. Consequently, the court made a thorough inquiry at the evidentiary hearing into the question of jurisdiction, fully developing all facts pertaining to sovereign immunity. See Transcript II at 151. *Upton v. Empire of Iran,* 459 F.Supp. 264, 265 (D.D.C.1978); *Bickham v. Miller,* 584 F.2d 736, 737 (5th Cir. 1978).

■ The Foreign Sovereign Immunities Act, [FSIA], provides a comprehensive procedure for the maintenance of suits *in personam* against foreign states and their agencies. *National American Corporation v. Federal Republic of Nigeria,* 448 F.Supp. 622, 638 (S.D.N.Y.1978).[2] The FSIA states generally that a foreign state shall be immune from the jurisdiction of the courts of the United States, except as specifically provided in §§ 1605–1607. The plaintiffs attempt to fit the facts of this case within the following exceptions:

1. *Waiver § 1605(a)(1)*

■ The court finds that Saudi Arabia did not waive the sovereign immunity de-

---

1. "Transcript I" is the transcript of the first hearing, held on August 22–23, 1979. "Transcript II" will refer to the transcript of the second hearing, held on April 22–23, 1980.

2. This court rejects Saudi Arabia's argument that because § 1604 of the FSIA states that the Act is "subject to international agreements" the Act should not apply to this case at all. The court agrees with the plaintiffs that § 1604 was designed to resolve any doubt that may be created by an express conflict between the terms of a preexisting treaty or like international agreement and the provisions of the Foreign Sovereign Immunities Act. 1976 U.S.Code Cong. & Admin.News pp. 6604, 6616; *Behring International, Inc., v. Imperial Iranian Air Force,* 475 F.Supp. 383, 393 (D.N.J.1979). No such conflict is apparent here.

fense by failing to timely answer. *See, International Association of Machinists and Aerospace Workers v. Organization of Petroleum Exporting Countries,* 477 F.Supp. 553, 575 (C.D.Cal.1979) [the OPEC case], (wherein the question of waiver was specifically raised to the court—see paragraph 14 on page 579—yet the court found no waiver of sovereign immunity from the defendant's failure to answer). *Compare Flota Maritima Browning de Cuba v. Motor Vessel Cuidad,* 335 F.2d 619 (4th Cir. 1964) (wherein the Republic of Cuba waived the defense of sovereign immunity by filing a general appearance and waiting three years to raise the defense of sovereign immunity).

■ A foreign state does not waive its sovereign immunity by merely entering into a contract with another nation. There must be an intentional and knowing relinquishment of the legal right. *Mitchell v. Aetna Casualty & Surety Co.,* 579 F.2d 342, 347 (5th Cir. 1978). Saudi Arabia's agreement to indemnify and hold harmless the United States government from loss and liability that the United States might incur in connection with the agreement, and Saudi Arabia's agreement to be responsible for all student transportation, simply do not approximate the type of implicit waiver Congress contemplated in § 1605(a)(1). The legislative history cites actions more emphatically implying a waiver of immunity, such as, an agreement to arbitrate in another country, an agreement that the law of another country will govern the contract, or the filing of a responsive pleading in an action without raising the defense of sovereign immunity. 1976 U.S. Code Cong. & Admin.News at 6617. *See, e. g., Ipitrade International v. Federal Republic of Nigeria,* 465 F.Supp. 824, 826 (D.D.C.1978); *Flota Maritima Browning de Cuba v. Motor Vessel Cuidad,* 335 F.2d 619, 625 (4th Cir. 1964).

·2. *Commercial Activity, § 1605(a)(2)*

■ The plaintiffs also claim an exception to immunity under the section providing that a foreign state is not immune in any case "in which the action is based on a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2). The statute explicitly directs that the character of an activity shall be determined by reference to the *nature* of the course of conduct or particular act, and not by reference to its purpose. 28 U.S.C. § 1603(d). The legislative history is helpful, but not determinative. The fact that "services to be procured through a contract are to be used for a public purpose is irrelevant; it is the essentially commercial nature of an activity or transaction that is critical." 1976 U.S.Code Cong. & Admin.News at 6615. The transaction at issue here could be broadly defined as the "sale of services" and so be deemed "commercial." But the activity could also be narrowly viewed as a non-profit agreement between two governments for the training of military personnel. So viewed, the transaction would be public or governmental, and protected by sovereign immunity.

At the adversary proceeding, counsel for Saudi Arabia directed the court's attention to the recent OPEC case, *International Association of Machinists and Aerospace Workers v. OPEC,* 477 F.Supp. 553 (C.D.Cal. 1979). In this case, as in the *OPEC* case, "commercial activity" is best defined narrowly; Saudi Arabia has the sole power to control its armed forces, and proper training of those forces is an essential ingredient of that control. In addition the fact that the contract is expressly "non-profit" convinces the court that the arrangement between the two sovereigns is not commercial in nature. *Compare United Euram Corporation v. Union of Soviet Socialist Republics,* 461 F.Supp. 609 (S.D.N.Y.1978), (the court found a "sale of services" commercial in nature where the plaintiff was to pay a fee to the Soviet agency *in addition* to the salaries and expenses of the tour.)

3. *Scope of Employment*

■ Section 1605(a)(5) abrogates a foreign state's immunity when money damages are sought for death occurring in the United States and caused by the tortious act or omission of the foreign state or of

any of its employees acting in the scope of employment. At the adversary hearing, Saudi Arabia proved that there were no flight training activities scheduled either on the 16th or the 17th of September, Transcript II at 30, and that Al-Qassimie was in civilian clothes at the time of the accident. Transcript II at 28. Applying state law principles of respondeat superior, *Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955), the court fails to see how the soldier can be said to have been in the course of his employment even while off duty and pursuing an entirely personal matter. *Standard Oil Company v. United States*, 307 F.2d 120, 128 (5th Cir. 1962); *Gifford-Hill & Company v. Moore*, 479 S.W.2d 711, 716 (Tex.Civ.App.—Tyler 1972, no writ).

In addition, Saudi Arabia put on evidence that Al-Qassimie was subject to the United States Air Force regulations while at Laughlin Air Force Base. Thus, it was the United States government who apparently had the right to control the soldier's behavior in off-duty hours, not the Saudi Arabian government. *See, Greyhound Van Lines, Inc. v. Bellamy*, 502 S.W.2d 586, 588 (Tex. Civ.App.—Waco 1973, no writ).

The plaintiffs also assert that section 1605(a)(5) applies because the foreign state itself tortiously failed to properly prepare Al-Qassimie for driving in the United States and negligently entrusted the automobile to the soldier. Saudi Arabia cannot be liable under a negligent entrustment theory because it did not own the automobile the soldier was driving at the time of the accident. Transcript II at 108. *See, Hines v. Nelson*, 547 S.W.2d 378, 385 (Tex. Civ.App.—Tyler 1977, no writ). Likewise, the fact that Al-Qassimie was issued a valid driver's license by the State of Texas negates any claim that Saudi Arabia tortiously failed to prepare him for life in the United States. Saudi Arabia is entitled to rely upon American testing procedures, based upon American standards, for the evaluation of Al-Qassimie's competence to operate automobiles on American roads.

■ The defendant has demonstrated that none of the exceptions in FSIA operate to deprive Saudi Arabia of its immunity from this court's jurisdiction. Consequently, the default judgment must be declared void, and the action dismissed for lack of subject matter and personal jurisdiction. 28 U.S.C. § 1330.

■ In the event that this court has erred in its ruling on the jurisdictional issue, the court rules that it would grant the defendant a new trial under Rules 55(c) and 60(b), F.R.C.P. Saudi Arabia produced ample evidence to show that its failure to answer was not, in fact, wilful, but rather the product of confusion or ignorance. *United Artists Corporation v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). Saudi Arabia's unique cultural differences and difficulties distinguish Saudi Arabia from domestic corporations who fail to answer due to an absence of minimal internal procedural safeguards. *See, Baez v. S. S. Kresge Co.*, 518 F.2d 349 (5th Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976), and *Davis v. Safeway Stores, Inc.*, 532 F.2d 489, 490 (5th Cir. 1976).

As discussed above, Saudi Arabia has shown that it has meritorious defenses to the plaintiffs' claims, and factual bases therefor. *See, Moldwood Corp. v. Stutts*, 410 F.2d 351, 352 (5th Cir. 1969); *United Artists Corporation v. Freeman*, 605 F.2d 854, 857 n. 4 (5th Cir. 1979). Finally, granting the motion for new trial will not greatly prejudice the plaintiffs. *See Bonaventure v. Butler*, 593 F.2d 625, 626 (5th Cir. 1979). The plaintiffs only assert that granting the motion for new trial will cause them to incur additional expense. Transcript II at 160–162.

The court reiterates that its favorable ruling on the motion for new trial is strictly limited to the event that the court has erred in its determination of the jurisdictional question. Being convinced that it does not have jurisdiction over this action against Saudi Arabia, the court hereby declares the default judgment void, and dismisses the action for lack of subject matter and per-

sonal jurisdiction. The clerk shall enter judgment accordingly.

SO ORDERED.