Samuel E. FRIEDAR, Plaintiff,

v.

The GOVERNMENT OF ISRAEL, Ministry of Defense of Israel, and the Consulate General of Israel in New York, Defendants.

No. 84 Civ. 9134 (PKL).

United States District Court, S.D. New York.

July 26, 1985.

Berney & Zweben, New York City (Andrew P. Zweben, New York City, of counsel), for plaintiff.

Novack & Richter, P.C., New York City (Martin Novack, New York City, of counsel), for defendants.

LEISURE, District Judge:

Samuel Friedar, a citizen of New York, brought this action under 28 U.S.C. §§ 1330, 1605 against the Government of Israel and branches thereof ("Government"). Friedar alleges that, after he was injured while serving in the Israeli Army in 1948, the Government failed to compensate him, as promised, for his medical costs and other related expenses incurred from 1948 to 1975. The Government has moved to dismiss on the grounds that, first, it is immune from the jurisdiction of this Court under 28 U.S.C. § 1604 and, second, the action is barred under the Act of State doctrine. The Government has also suggested that this action would more appropriately be brought in Israeli courts. I find that the Government is entitled to sovereign immunity under 28 U.S.C. §§ 1604–

1607 and that, even if the Court had jurisdiction, the action should be dismissed under the Act of State doctrine. The Government's motion to dismiss is hereby granted.

## BACKGROUND

For the purposes of this motion, I will accept Friedar's allegations of material facts as true. *Asociacian de Reclamantes v. United Mexican States*, 561 F.Supp. 1190, 1192 (D.D.C.1983), *aff'd*, 735 F.2d 1517 (D.C.Cir.1984). In 1948, the Government recruited Friedar in the United States to join the Israeli Army. The Government promised Friedar that he would be compensated for his losses if he were injured. Friedar was subsequently injured and incurred medical expenses and other losses. According to Friedar's attorney, the Government expressly promised on several occasions to reimburse Friedar for these medical expenses.[1] The Government ratified Friedar's claim but did not compensate him retroactively for expenses incurred from 1948 to 1975.

In Friedar's four-count amended complaint, he alleges that 1) the Government's refusal to reimburse Friedar for his expenses violates international, American and Israeli law; 2) the Government intentionally withheld information regarding Friedar's eligibility for compensation; 3) the Government negligently allowed its files on Friedar to be lost or destroyed; and 4) the Government wrongfully converted the sum Friedar claims.

The Government argues in support of its motion that the Government is immune, under 28 U.S.C. § 1604, from the jurisdiction of the United States courts. The Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. §§ 1330, 1332(a)(2)–1332(a)(4), 1391(f), 1441(d), 1602–1611 (1982), codifies the principle of restrictive sovereign immunity. Section 1605 describes several categories of cases in which a foreign state will not be immune from the jurisdiction of United States courts. The Government asserts that the circumstances

of this case and the allegations in the complaint do not fall into any of the exceptions to sovereign immunity listed in § 1605. The Government alternatively argues that the Act of State doctrine would bar this action.

In reply, Friedar argues that neither § 1604 nor the Act of State doctrine bar this action. Friedar suggests several bases for a § 1605 exception to sovereign immunity. First, representations made to the plaintiff and the letters from the Israeli Consul constitute explicit and implicit waivers of sovereign immunity. Second, the Government was acting within the scope of commercial activity in contracting with Friedar for his services. Third, the Government was acting as an insurer that wrongfully withheld property from Friedar. Friedar also argues that the Act of State doctrine is inapplicable because the case involves actions occurring outside of Israel.

## DISCUSSION

### A. Sovereign Immunity.

■ Congress intended, in enacting FSIA, to codify current standards of international law regarding sovereign immunity. *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 310 (2d Cir.1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982). Under these standards, foreign governmental entities are subject to suit for their private or commercial acts, but are immune from suit for their public acts. *E.g., Eastern Europe Domestic International Sales Corp. v. Terra*, 467 F.Supp. 383, 386 (S.D. N.Y.1979). Section 1605, the pertinent provision here, lists the situations in which a foreign state will not be immune from suit. The criteria contained in § 1605 also serve to establish that minimum contacts exist for purposes of in personam jurisdiction. *Id.* at 387. Each of the categories that Friedar alleges are applicable here will be addressed in turn.

---

**1.** Attached to the attorney's affidavit are copies of letters from the Israeli Consul in New York bearing July, 1983 and January, 1984 dates, but

these letters merely authorize examinations and consultations of Friedar and state that treatment will require separate authorization.

■ Section 1605(a)(1) states that a foreign state relinquishes its claim to immunity when the foreign state "waive[s] the immunity either explicitly or by implication." Friedar argues that the Government's alleged representations that it would pay for his medical expenses constitute both explicit and implied waivers. The link between an agreement to pay expenses and a waiver of immunity is, however, tenuous at best. Entering into a contract does not, by itself, constitute waiver of immunity. *Castro v. Saudi Arabia,* 510 F.Supp. 309, 312 (W.D.Tex.1980). To construe implied waiver so expansively would be inconsistent with the legislative history of FSIA and the relevant case law. *See, e.g., Maritime International Nominees Establishment v. Republic of Guinea,* 693 F.2d 1094, 1102–04 (D.C.Cir.1982), *cert. denied,* — U.S. ——, 104 S.Ct. 71, 78 L.Ed.2d 84 (1983) (agreement to submit to arbitration did not constitute implied waiver of immunity); *Paterson, Zochonis (U.K) Ltd. v. Compania United Arrow,* 493 F.Supp. 621, 629 (S.D.N.Y.1980) (designation of agent in the United States to receive service of process did not amount to an implied waiver, when the appointment was made in order to comply with Federal Maritime Commission regulations); *Harris v. Vao Intourist, Moscow,* 481 F.Supp. 1056, 1058 (E.D.N.Y.1979) ("the legislative history [of FSIA] suggests that implied waivers by commercial action are not consonant with the Act's purposes; implicit waivers are reflected in actions relating to adjudication and explicit waivers are found in treaties."). I therefore find that the Government did not waive its sovereign immunity.

Section 1605(a)(2) describes three situations where the commercial activity of the foreign state disqualifies the state from immunity.[2] The applicability to the present case of all three categories described in § 1605(a)(2) hinges on whether the Government's conduct can be considered commercial. Section 1603(d) states that "the commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than reference to its purpose." The distinction between nature and purpose, however, in determining whether conduct is commercial or governmental, is often elusive. *See* Note, *Foreign Sovereign Immunity and Commercial Activity: A Conflicts Approach,* 83 Colum.L.Rev. 1440, 1480–1482 (1983).

■ Traditionally, a country's internal administrative activity and management of its armed forces were deemed governmental acts, over which it would be improper for another country's courts to sit in judgment. *Heaney v. Government of Spain,* 445 F.2d 501, 503 (2d Cir.1971). Under FSIA, however, a government would no longer have sovereign immunity when it enters the market place to purchase supplies for its military. *See, e.g., Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982). In *Castro v. Saudi Arabia,* 510 F.Supp. 309 (W.D.Tex.1980), the court considered whether an agreement to train Saudi soldiers in the United States could be considered "commercial activity" for immunity purposes. The court determined that while the agreement could be characterized broadly as a commercial sale of services, a narrower characterization was more appropriate, *i.e.,* that the non-profit transaction involved a sovereign function of training its military. *Id.* at 312.

■ Friedar attempts to characterize the Government's alleged conduct as a breach of contract for services and emphasizes that Friedar's original contract was with private groups prior to the existence of

---

**2.** Section 1605 provides in part:

(a) A foreign state shall not be immune from the jurisdiction of the courts of the United States ... in any case—...

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a foreign commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

Israel. Since the purpose of the contract is irrelevant under FSIA, a contract for services, Friedar argues, is necessarily commercial. I disagree. In straining to fit the Government's activities into the categories of § 1605, Friedar isolates the form of the alleged transaction while ignoring its nature. Under the broadest characterization, whereby only the contracted form of the initial transaction is considered, the alleged activity conceivably might be labeled commercial. However, when the nature of the activities is analyzed—recruiting an army, no matter from what source, and determining eligibility for veterans' benefits—the acts clearly involve sovereign functions. As in *Castro*, the broadest conceivable characterization would be inappropriate.

Leaving aside the purposes of the Government's alleged acts, it is clear to me that the nature of the activities in question here is purely governmental. Unlike the purchase of supplies that eventually may be used for military purposes, recruiting soldiers and determining eligibility for veterans' benefits are activities conducted only by governments. *Cf. Mol, Inc. v. Peoples Republic of Bangladesh*, 572 F.Supp. 79, 84–85 (D.Ore.1983), *aff'd*, 736 F.2d 1326 (9th Cir.1984) (entering a license agreement to export monkeys involved sovereign capacities and therefore was non-commercial for immunity purposes). I therefore decline to find that the Government's alleged activity in this case can be characterized as commercial.

■ Friedar further alleges that the Government wrongfully withheld property in violation of international law, in reference to § 1605(a)(3) & (4).[3] Again, the exceptions to sovereign immunity described in these provisions are inapplicable to the Government's alleged activity. Section 1605(a)(3) was intended to apply only to the expropriation of property, not to the failure to make payments. *Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*, 528 F.Supp. 1337, 1346 (S.D.N.Y. 1982) (the "language of § 1604(a)(3) [1605(a)(3)], applicable to tangible property, is on its face inapplicable to a contractual right to be paid"), *aff'd.*, 727 F.2d 274 (2d Cir.1984). Similarly, the language of § 1605(a)(4) on its face bears no relation to the circumstances of this case. Friedar again has labeled the activity wholly out of context in an attempt to establish a § 1605 exception.

Friedar's allegations that jurisdiction may be based on the exceptions to sovereign immunity enumerated in § 1605 are without merit. The Government is entitled to sovereign immunity under § 1604.

B. Act of State Doctrine.

■ Had I found that the Government was not entitled to immunity under §§ 1604–1605, I would nevertheless dismiss the case under the Act of State doctrine, which holds that one country's courts should not judge the acts of a foreign state executed within the foreign state's borders.[4] The Act of State doctrine, unlike a determination of jurisdiction under FSIA, is discretionary in its application. *Asociacian de Reclamantes v. United Mexican States*, 561 F.Supp. 1190, 1199 (D.D.C. 1983), *aff'd.*, 735 F.2d 1517 (D.C.Cir.1984). The doctrine developed from the recognition of the politically sensitive nature of

---

**3.** Section 1605(a)(3) & (4) denies immunity in cases:

(3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in commercial activity in the United States;

(4) in which rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue.

**4.** Indeed, the Second Circuit recently held that, where the Court affirms the district court's dismissal of the complaint on Act of State grounds, it need not consider whether the defendant is immune from suit under FSIA. *Braka v. Bancomer, S.N.C.*, 762 F.2d 222, 224 (2d Cir.1985).

judging the validity of acts by a foreign state and the relative institutional competence of the judiciary to make such a determination. *International Assoc. of Machinists and Aerospace Workers v. OPEC*, 649 F.2d 1354, 1358 (9th Cir.1980).

A determination regarding veterans' benefits in the United States is precluded from judicial review. 38 U.S.C. § 211. It would be presumptuous for a United States court to review a foreign state's internal administrative activity, especially when identical activity by the United States government would not be subject to judicial review. I find this suit inappropriate for adjudication by United States courts.[5]

Accordingly, the Government's motion to dismiss is granted.

SO ORDERED.

---

**5.** I further note that the difficulty of trying this case in United States courts would justify a dismissal on forum non conveniens grounds.