890 F.2d 97
 Glenn V. BREWER and Paula M. Brewer, Appellants,
v.
The SOCIALIST PEOPLE'S REPUBLIC OF IRAQ and the State
Organization for Tourism, an Instrumentality of
the Socialist People's Republic of Iraq,
Appellees.
 No. 88-1646.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 16, 1988.
Decided Nov. 22, 1989.
 
 1
 Dempster K. Holland, St. Louis, Mo., for appellants.
 
 
 2
 No one argued for appellees.
 
 
 3
 Before ARNOLD and JOHN R. GIBSON, Circuit Judges, and ROSENBAUM,* District Judge.
 
 
 4
 ROSENBAUM, District Judge.
 
 
 5
 Plaintiffs were granted a default judgment on September 3, 1986. This appeal, however, stems not from this judgment, but from a subsequent district court[1] order, dated April 11, 1988, denying attachment of, and execution upon, defendants' property pursuant to the judgment. Plaintiffs argue they are entitled to execution under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. Secs. 1602, et seq. As delineated below, we affirm.
 
 I. BACKGROUND
 
 6
 In October, 1982, while in Detroit, Michigan, plaintiffs entered into an employment contract with defendants. The agreement provided that plaintiffs would work for defendants at a tourist facility in Habbaniya, Iraq. In that same month, plaintiffs moved to Iraq and began their duties.
 
 
 7
 On February 1, 1985, defendants terminated the agreement and refused to pay plaintiffs. On or about February 4, 1985, plaintiffs were forcibly evicted from their dwelling in Iraq by unknown individuals wielding firearms. These individuals drove plaintiffs to a nearby airport where plaintiffs were forced to board a plane leaving Iraq. All of plaintiffs' belongings were left behind and presumably fell into the hands of defendants or their agents.
 
 
 8
 Plaintiffs, having been denied their pay under the contract and now without their belongings, instituted this cause of action. Their complaint is in three counts: first, breach of contract; second, reimbursement for converted property; and third, damages for infliction of emotional distress arising out of their forced eviction and expulsion from Iraq. On September 3, 1986, the Honorable John K. Regan, United States District Judge, entered an order granting plaintiffs default judgment on all three claims pursuant to the FSIA, 28 U.S.C. Secs. 1602, et seq. Prior to hearing these matters concerning attachment and execution, Judge Regan died.
 
 
 9
 The case was reassigned to Judge Gunn. Judge Gunn approved execution on Count II of the complaint, but declined to allow execution on Count I or III. As to Count I, Judge Gunn reasoned that the contract claim judgment did not create "rights in property" as defined in the FSIA, thereby foreclosing execution pursuant to 28 U.S.C. Sec. 1610(a)(3). After expressing serious doubt as to whether the district court had jurisdiction as to Count III, Judge Gunn similarly held that plaintiffs' judgment on the emotional distress claim did not create "rights in property."
 
 II. ANALYSIS OF FSIA
 
 10
 Congress enacted the FSIA to delineate "when and how parties can maintain a lawsuit against a foreign state or its entities in the Courts of the United States," and "when a foreign state is entitled to sovereign immunity." H.R.Rep. No. 1487, 94th Cong., 2d Sess. 6 (1976), reprinted in 1976 United States Code Cong. & Admin.News 6604, 6604. Application of the statute requires "some unraveling of the Act's interlocking provisions governing the separate issues of subject matter jurisdiction, sovereign immunity, and personal jurisdiction." Maritime Int'l Nominees Establishment v. Republic of Guinea, 693 F.2d 1094, 1099 (D.C.Cir.1982), cert. denied, 464 U.S. 815, 104 S.Ct. 71, 78 L.Ed.2d 84 (1983).
 
 
 11
 Title 28, United States Code, Section 1330(a), addresses subject matter jurisdiction over foreign states. It grants to federal district courts:
 
 
 12
 original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.
 
 
 13
 28 U.S.C. Sec. 1330(a).
 
 
 14
 Personal jurisdiction is encompassed in 28 U.S.C. Sec. 1330(b). The section provides, in relevant part:
 
 
 15
 Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.
 
 
 16
 28 U.S.C. Sec. 1330(b).
 
 
 17
 While it is axiomatic, subsection (b) makes clear that lack of subsection (a) subject matter jurisdiction deprives a district court of personal jurisdiction. If a nation enjoys subsection (a) sovereign immunity, no claim may be maintained under FSIA. The "absence of immunity is a condition to the presence of subject matter jurisdiction." Maritime Int'l Nominees, 693 F.2d at 1099.
 
 
 18
 The FSIA has three immunity provisions pertinent to this matter. Under the Act, a foreign state or its agents are without immunity in cases:
 
 
 19
 (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;
 
 
 20
 (3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States;
 
 
 21
 * * *
 
 
 22
 * * *(5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment....
 
 
 23
 28 U.S.C. Sec. 1605(a)(2), (3), and (5). If any of these provisions are satisfied, the foreign state is subject to civil suit.
 
 
 24
 The FSIA, however, holds another immunity barrier. Foreign states are further protected from execution of judgments by 28 U.S.C. Sec. 1609, which provides, in pertinent part:
 
 
 25
 Subject to existing international agreements to which the United States is a party at the time of enactment of this Act the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter.
 
 
 26
 28 U.S.C. Sec. 1609.
 
 
 27
 Therefore, even the victorious plaintiff may only pursue particular property of a foreign state. Title 28, United States Code, Section 1610, excepts certain property from this immunity. That section states, in relevant part:
 
 
 28
 (a) The property in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if--
 
 
 29
 * * *
 
 
 30
 * * *
 
 
 31
 (2) the property is or was used for the commercial activity upon which the claim is based, or
 
 
 32
 (3) the execution relates to a judgment establishing rights in property which has been taken in violation of international law or which has been exchanged for property taken in violation of international law.
 
 
 33
 28 U.S.C. Sec. 1610(a)(2) and (3).
 
 
 34
 Sections 1605(a)(3) and 1610(a)(3) do not define "rights in property." The provision has been defined, however, and limited to the expropriation of property. A court will have jurisdiction pursuant to Section 1605(a)(3), therefore, only if property has been taken from a plaintiff. Kalamazoo Spice Extraction Co. v. Provisional Military Government of Socialist Ethiopia, 616 F.Supp. 660, 663 (W.D.Mich.1985); Friedar v. Government of Israel, 614 F.Supp. 395, 399 (S.D.N.Y.1985); Canadian Overseas Ores Ltd. v. Compania de Acero de Pacifico S.A., 528 F.Supp. 1337, 1346 (S.D.N.Y.1982), aff'd, 727 F.2d 274 (2d Cir.1984). As will be seen below, a coherent reading of Section 1610(a)(3) indicates a plaintiff may only execute pursuant to that section if such property has been expropriated.
 
 
 35
 Plaintiffs appeal the district court's denial of attachment and execution on Counts I and III. Plaintiffs argue that their judgment on Counts I and III entitle them to execution pursuant to Section 1610(a)(3). They argue that their claims of breach of contract and infliction of emotional distress create property rights.
 
 
 36
 Plaintiffs also contend the district court erred in concluding it had no jurisdiction over the emotional distress claim pursuant to Section 1605(a)(2) and suggest that the jurisdiction question is res judicata based upon their default judgment. As is seen below, this issue, going to the heart of the court's authority, remains open for review by this Court. Plaintiffs argue their tort claim is sufficiently connected to commercial activities carried on by defendant to satisfy Section 1605(a)(2).
 
 III. DISCUSSION
 
 37
 The district court has jurisdiction only if defendants are without immunity. Olsen by Sheldon v. Government of Mexico, 729 F.2d 641, 644 (9th Cir.), cert. denied, 469 U.S. 917, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984). Generally, the party seeking to invoke immunity is allocated the burden of proof on that issue. Trans-American Steamship Corporation v. Somali Democratic Republic, 767 F.2d 998, 1002 (D.C.Cir.1985); Vencedora Oceania Navigacion v. Companie Nationale Algerienne De Navigation, 730 F.2d 195, 199 (5th Cir.1984). Yet, even if a party fails to enter an appearance and assert its claim of immunity, a court must determine whether immunity is available pursuant to the FSIA. Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 494 n. 20, 103 S.Ct. 1962, 1971 n. 20, 76 L.Ed.2d 81 (1983). We must, therefore, consider whether the district court properly invoked jurisdiction and, if so, whether it correctly permitted or disallowed execution.
 
 A. Count I--Breach of Contract
 1. Jurisdiction
 
 38
 The district court held it had jurisdiction over plaintiffs' breach of contract claim pursuant to Section 1605(a)(2). The district court did not specify the clause of Section 1605(a)(2) it relied upon to invoke jurisdiction. For purposes of this appeal, it is only important to note that since plaintiffs' contract claim was within the ambit of Section 1605(a)(2), it necessarily involved a "commercial activity."
 
 The FSIA defines a commercial activity as:
 
 39
 a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.
 
 
 40
 28 U.S.C. Sec. 1603(d). The FSIA further provides that:
 
 
 41
 "commercial activity carried on in the United States by a foreign state" means commercial activity carried on by such state and having substantial contact with the United States.
 
 
 42
 28 U.S.C. Sec. 1603(e). Congress elaborated on this definition by providing the following examples:
 
 
 43
 Certainly, if an activity is customarily carried on for profit, its commercial nature could readily be assumed. At the other end of the spectrum, a single contract, if of the same character as a contract which might be made by a private person, could constitute a "particular transaction or act."
 
 
 44
 ....
 
 
 45
 Activities such as a foreign government's sale of a service or product, its leasing of property, its borrowing of money, its employment or engagement of laborers, clerical staff or public relations or marketing agents or its investment in a security of an American corporation, would be among those included within the definition.
 
 
 46
 H.R.Rep. No. 1487, 94th Cong., 2d Sess. 16 (1976), reprinted in 1976 U.S.Code Cong. & Admin.News 6604, 6615. Congress' proposition that such contracts are commercial activities has been affirmed by courts interpreting Section 1605(a)(2). See Zedan v. Kingdom of Saudi Arabia, 849 F.2d 1511, 1513 (D.C.Cir.1988); Segni v. Commercial Office of Spain, 835 F.2d 160, 165-66 (7th Cir.1987); Meadows v. Dominican Republic, 817 F.2d 517, 523 (9th Cir.), cert. denied, 484 U.S. 976, 108 S.Ct. 486, 98 L.Ed.2d 485 (1987); Texas Trading & Milling Corp. v. Federal Republic of Nigeria, 647 F.2d 300, 310 (2d Cir.1981), cert. denied, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982).
 
 
 47
 The district court could not accept jurisdiction over Count I pursuant to Section 1605(a)(3). As discussed, Section 1605(a)(3) is limited to claims involving expropriation of property. Some courts have interpreted this to exclude claims involving intangible property, such as contracts. Friedar, 614 F.Supp. at 399; Canadian Overseas Ores Ltd., 528 F.Supp. at 1346; see DeSanchez v. Banco Central De Nicaragua, 770 F.2d 1385, 1395 (5th Cir.1985). In this case, plaintiffs' contract rights were not expropriated--rather, the contract itself was repudiated by defendants. See Kalamazoo Spice Extraction Co., 616 F.Supp. at 663 n. 5. We find that such a repudiation is not equivalent to expropriation. Defendants' breach of contract did not create "rights in property."2. Execution
 
 
 48
 Plaintiffs seek execution under Sec. 1610(a)(3). This provision applies only to judgments "establishing rights in property." We have already held that plaintiffs' judgment for breach of contract did not establish such rights. The attempt to execute under Sec. 1610(a)(3), therefore, must be unavailing.
 
 B. Count III--Emotional Distress
 1. Jurisdiction
 
 49
 The district court intimated that jurisdiction over plaintiffs' emotional distress claim was tenuous, saying:
 
 
 50
 Plaintiffs asserted and the Court previously accepted the assertion that it possessed jurisdiction over Count III, plaintiffs' tort claim, pursuant to 28 U.S.C. Sec. 1605(a)(2) which provides for subject matter jurisdiction over "an action based upon a commercial activity carried on in the United States." 28 U.S.C. Sec. 1605(a)(2). Although the advertising and promotion of tourism are commercial activities within the meaning of the statute, the Court questions whether plaintiffs' [emotional distress] tort is sufficiently connected to these activities so as to fall within this exception.
 
 
 51
 Memorandum and Order, 2-3. The district court then held:
 
 
 52
 Assuming that a sufficient connection exists to warrant the exercise of jurisdiction over this claim, the Court is nevertheless persuaded that plaintiffs are not entitled to an order for attachment and execution with respect to the judgment entered on Count III because the judgment does not establish "rights in property." 28 U.S.C. Sec. 1610(a)(3). Count III unequivocally sounds in tort and does not, therefore, establish property rights.
 
 
 53
 Id. at 3. We now make clear that the district court's expression of doubt was well founded.
 
 
 54
 Although the district court equivocated over its subject matter jurisdiction, its holding with respect to execution clearly presumed the existence of jurisdiction. If the district court had declined jurisdiction, the holding with respect to execution would have been superfluous. It appears, then, that the district court exercised jurisdiction pursuant to Section 1605(a)(2).
 
 
 55
 Once again, the district court presumed that some "commercial activity" was associated with plaintiffs' claim. For purposes of this appeal, we need not rule on the accuracy of the district court's holding in this regard. It is sufficient to emphasize that jurisdiction was not based upon an expropriation pursuant to Section 1610(a)(3). We decline, therefore, to disturb the district court's decision.
 
 2. Execution
 
 56
 The district court's denial of execution on plaintiffs' Section 1605(a)(2) claim pursuant to Section 1610(a)(3) is a consistent interpretation of the FSIA. We have held plaintiffs' contract claim, pursuant to Section 1605(a)(2), may not be executed upon pursuant to Section 1610(a)(3). The holding applies with equal force to plaintiffs' emotional distress claim. We decline to disturb the district court's holding in this respect.
 
 
 57
 Accordingly, we affirm the district court.
 
 
 
 *
 The HONORABLE JAMES M. ROSENBAUM, United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 The Honorable George F. Gunn, Jr., United States District Judge, Eastern District of Missouri