John ROE III, et al., Plaintiffs,

v.

UNOCAL CORPORATION and Union Oil Company of California, Defendants.

No. CV 96–6112 RAP (BQRx).

United States District Court, C.D. California.

Aug. 10, 1999.

Terry Collingsworth, International Labor Rights Fund, Washington, D.C., Peter A. Schey, Carlos R. Holguin, Center for Human Rights & Constitutional Law, Los Angeles, CA, Cristobal Bonifaz, John C. Bonifax, Law Offices of Christobal Bonifaz, Amherst, MA, Joseph C. Kohn, Martin J. D'Urso, Kohn, Swift & Graf, P.C., Philadelphia, PA, Christopher E. Krafchak, Steven Rehaut, Gilbert & Sackman, Los Angeles, CA, for plaintiffs.

Edwin V. Woodsome, Jr., D. Barclay Edmundson, Ann E. Grant, Howrey & Simon, Los Angeles, CA, Kristin Linsley Myles, Daniel P. Collins, Douglas A. Axel, Munger, Tolles & Olson, LLP, Los Angeles, CA, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF JOHN ROE IX

PAEZ, District Judge.

### I.

### *Introduction*

Pending before the Court is defendant Unocal Corporation's ("Unocal") motion to dismiss plaintiff John Roe IX with prejudice. Plaintiff Roe IX asserts six causes of action: (1) Alien Tort Claims Act, 28 U.S.C. § 1350; (2) civil conspiracy; (3) joint venture liability; (4) implied partnership liability; (5) negligence; and (6) negligent infliction of emotional distress. Defendant Unocal claims that plaintiff Roe IX's claims in the Third Amended Complaint are barred by the act of state doctrine. In the alternative, Unocal seeks dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In response, plaintiff asks the Court to convert the motion to a summary judgment motion and subsequently deny it because triable issues of fact exist. Upon consideration of all written and oral argument, the Court

hereby **GRANTS** defendant's motion to dismiss plaintiff John Roe IX with prejudice for the reasons set forth below.

## II.

### *Factual Background*

The Court has previously described the factual allegations of plaintiffs' complaint. *See National Coalition Gov't of Union of Burma v. Unocal, Inc.*, 176 F.R.D. 329 (C.D.Cal.1997). Rather than reiterate a summary of the case, the Court presumes familiarity with the basic facts and discusses below only those facts relevant to the Court's determination of the motion to dismiss.

Plaintiff John Roe IX voluntarily joined the Burmese military in 1992. *See* Third Amended Complaint ("TAC"), ¶ 57. He was eventually assigned to SLORC battalion 282. *See* TAC, ¶ 57. He alleges that the battalion was formed to provide security for Unocal's pipeline. *Id.* While acting as a soldier in the army, John Roe IX allegedly witnessed acts of brutality carried out by officers and soldiers on villagers. *Id.* Roe IX also asserts that his battalion received food from Unocal and Total in exchange for providing security for the pipeline. *Id.*

In 1997, his commanding officer ordered Roe IX to perform construction work in connection with the pipeline project. *See* TAC, ¶ 58. Specifically, Roe IX and 200 other soldiers were ordered to dig a drainage trench to divert water from the pipeline. *Id.* After three months of digging the trench without pay, Roe IX left the army and fled to Thailand. *Id.*

## III.

### *Discussion*

**A. Standard for Rule 12(b)(6)**

 A motion to dismiss premised on the act of state doctrine is treated as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Siderman de Blake v. Republic of Argenti-*na, 965 F.2d 699, 707 (9th Cir.1992). A motion to dismiss under 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Accordingly, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir.1994). The court may, however, consider exhibits submitted with the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1989); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir.1988). In fact, even if a document is neither submitted with the complaint nor explicitly referred to in the complaint, the district court may consider the document in ruling on a motion to dismiss so long as the complaint necessarily relies on the document and the document's authenticity is not contested. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir.1998).

Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990). The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir.1997). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir.1994). The court is not required, however, to accept "conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg*, 18 F.3d at 754–55.

■ Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). The notice pleading standard set forth in Rule 8 establishes "a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan*, 108 F.3d at 248 (citations omitted). Consequently, a court may not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by the inclusion of additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995). A plaintiff does not waive claims dismissed without leave to amend by failing to reallege them in an amended complaint. *Parrino*, 146 F.3d at 704.

## B. Act of State Doctrine[1]

■ The act of state doctrine precludes a court of the United States from considering a plaintiff's claims where either the claims or the defenses asserted would require the court to determine that a foreign sovereign's official acts performed in its own territory were invalid. *W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp. Int'l*, 493 U.S. 400, 405, 110 S.Ct.

701, 107 L.Ed.2d 816 (1990). Unocal argues, in asserting the applicability of the doctrine, that by adjudicating plaintiff Roe IX's claims, this Court will necessarily pass judgment on the validity of SLORC's official military acts. In response, plaintiff contends that it is an issue of fact whether his commanding officer was acting under official authority. Thus, plaintiff maintains that defendant has not met its burden of proof.

■ The Supreme Court's treatment of the act of state doctrine has shifted over time. *Kirkpatrick*, 493 U.S. at 404, 110 S.Ct. 701. The classic statement of the doctrine rested on notions of international comity,[2] but more recent formulations focus on the principle of separation of powers. *Id.* Taken as a whole, the act of state doctrine:

> expresses the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder rather than further this country's pursuit of goals both for itself and for the community of nations as a whole in the international sphere.

*Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 423, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). In other words, the act of state doctrine embodies the purely prudential concern that judicial inquiry into the validity of a foreign nation's sovereign acts may interfere with Executive and Congressional foreign policy efforts. *Siderman de Blake*, 965 F.2d at 717; *see also Republic*

1. The Court has previously addressed the act of state doctrine in its ruling on defendant's motion to dismiss. *See National Coalition Gov't*, 176 F.R.D. at 349–57. Although the Court has considered the parties' arguments regarding the act of state doctrine, the Court is not persuaded that it should alter its view of this prudential doctrine. Thus, in evaluating the instant motion, the Court relies heavily on its prior analysis of the act of state doctrine.

2. According to the classic statement:

> Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves.

*Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 423, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) (quoting *Underhill v. Hernandez*, 168 U.S. 250, 252, 18 S.Ct. 83, 42 L.Ed. 456 (1897)).

*of the Philippines v. Marcos*, 862 F.2d 1355, 1360 (9th Cir.1988) (citing *Sabbatino*, 376 U.S. at 427–28, 84 S.Ct. 923); *International Ass'n of Machinists and Aerospace Workers v. OPEC*, 649 F.2d 1354, 1360 (9th Cir.1981).

■ Because the goal of the act of state doctrine is to protect the interests of the United States and of the international community, the doctrine is not applied at every opportunity. Instead, as the Supreme Court recently put it:

> Courts in the United States have the power, and ordinarily the obligation, to decide the cases and controversies properly presented to them. The act of state doctrine does not establish an exception for cases and controversies that may embarrass foreign governments, but merely requires that, in the process of deciding, the acts of foreign sovereigns taken within their own jurisdiction shall be deemed valid.

*Kirkpatrick*, 493 U.S. at 405, 110 S.Ct. 701. In short, the act of state doctrine may only be invoked to bar adjudication of a plaintiff's claims when the nature of the claims or defenses will require the court to declare invalid a foreign sovereign's official acts, in other words, when "the outcome of the case turns upon [ ] the effect of official action by a foreign sovereign." *Id.* at 406, 110 S.Ct. 701.

The Supreme Court has made it clear that the act of state doctrine is not "an inflexible and all-encompassing rule." *Sabbatino*, 376 U.S. at 428, 84 S.Ct. 923. Rather than formalistically applying the doctrine whenever it is technically available, "a sort of balancing approach" can be used to determine whether the policies underlying the doctrine justify its application. *Kirkpatrick*, 493 U.S. at 409, 110 S.Ct. 701. Thus, it is appropriate to take into account that

> the greater the degree of codification or consensus concerning a particular area of international law, the more appropriate it is for the judiciary to render decisions regarding it, since the courts can

then focus on the application of an agreed principle to circumstances of fact rather than on the sensitive task of establishing a principle not inconsistent with the national interest or with international justice. It is also evident that some aspects of international law touch much more sharply on national nerves than do others; the less important the implications of an issue are for our foreign relations, the weaker the justification for exclusivity in the political branches. The balance of relevant considerations may also be shifted if the government which perpetrated the challenged act of state is no longer in existence, as in the Bernstein case, for the political interests of this country may, as a result, be measurably altered.

*Sabbatino*, 376 U.S. at 428, 84 S.Ct. 923.

■ When applying the *Sabbatino* test, the party asserting the applicability of the act of state doctrine bears the burden of proof. *See Liu v. Republic of China*, 892 F.2d 1419, 1432 (9th Cir.1989). "At a minimum, this burden requires that a party offer some evidence that the government acted in its sovereign capacity and some indication of the depth and nature of the government's interest." *Id.* (finding doctrine inapplicable where plaintiff sued the Republic of China for the assassination of her husband). Although precedent is less than clear about the parameters of the "official acts" limitation, the Supreme Court has distinguished between "public and governmental acts of sovereign states on the one hand and their private and commercial acts on the other[.]" *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 694, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976). Where the facts presented are not "sufficient to demonstrate that the conduct in question was the public act of those with authority to exercise sovereign powers," the court should not presume that the conduct at issue was an "official act" of the foreign sovereign. *Id.* (finding facts insufficient to show commercial conduct was public act of

foreign sovereign entitled to respect in our courts where no statute, decree, order or resolution was offered in evidence to show Cuban government had repudiated obligations or "as a sovereign matter" determined to confiscate amounts due to foreign importers).

Here, plaintiff Roe IX seeks review of an alleged violation of international law, forced labor. Based on the foregoing authority, the Court must determine whether SLORC is a foreign sovereign, whether Roe IX's claims turn on an official act of SLORC and whether the *Sabbatino* factors support or undermine application of the act of state doctrine to bar plaintiff Roe IX's claims.

### 1. The United States Conducts Diplomatic Relations with SLORC

Unocal has requested that the Court take judicial notice of the fact that the United States has "recognized" SLORC as the sovereign authority in Burma. Both parties point out that the military junta in Burma has undergone recent restructuring and is now called the State Peace and Development Council ("SPDC"). (Defendant's Request for Judicial Notice Exh. B.) In support of its request, Unocal proffers portions of the Department of State, Burma Country Commercial Guide for 1999, and a Department of State press-release condemning the recent sentencing of seven dissidents.

The Department of State's 1999 Burma Country Commercial Guide ("Guide") indicates that "[t]he political relationship between the U.S. and Burma is strained" and that "relations between the United States and Burma have been cool since the 1988 military coup." (Defendant's Request for Judicial Notice Exh. A at 6.) The Court also notes that it has previously acknowledged that the United States government has recognized SLORC as the sovereign authority of Burma. *See National Coalition Gov't*, 176 F.R.D. at 351–52. Finally, in its Statement of Interest filed with the Court on July 9, 1997, the United States

Department of State indicated that "adjudication of the claims based on allegations of torture and slavery would not prejudice or impede the conduct of U.S. foreign policy with *the current government of Burma*," proving that the United States presently maintains some form of diplomatic relations with SLORC, as the current government of Burma. (Statement of Interest of the United States Exh. A at 2 (emphasis added)).

 No factual circumstance has occurred to make the Court alter its former conclusion that SLORC/SPDC is recognized as the current government of Burma by the United States. The Guide and the press release both support defendant's contention that the SPDC has replaced SLORC and is still recognized by the U.S. Government. In light of the foregoing evidence proffered by Unocal, the Court takes judicial notice of the fact that the United States conducts diplomatic relations with SLORC/SPDC as the current government of Burma. Accordingly, SLORC/SPDC is properly deemed a foreign sovereign for purposes of the act of state doctrine.

### 2. Unocal Has Shown SPDC's Challenged Acts Were Official

Whether resolution of the pending suit turns on SPDC's official actions is a complex question. Unocal correctly identifies that an SPDC military officer's act is at issue in this litigation. As Unocal's liability is premised on the acts of its alleged joint venturer or implied partner, plaintiff Roe IX may only assert claims against Unocal on the basis of official actions for which SPDC could conceivably be liable were it not protected by the Foreign Sovereign Immunities Act. Unocal establishes the official nature of the officer's order by relying on Burma law, case authority and public policy.

First, an examination of Burma law reveals that an order to undertake public works construction by a military officer

does not conflict with Burma law. Nyein Kyaw, a Burmese lawyer, declares that neither the Defense Services Act of 1959 nor the Defense Services Rules of 1960 specifically outline the scope of authority for a military officer. (Kyaw Decl. ¶ 4.) Furthermore, the Defense Services Act provides that:

> Any person subject to this Act [ie a member of the defense services] who disobeys ... any lawfully command given personally by his superior officer shall, on conviction by court-martial, be liable to suffer imprisonment [ ].

(Kyaw Decl. ¶ 4.)

■ Second, an order given by a military officer has traditionally been viewed as an official act of a sovereign for purposes of the act of state doctrine. *See e.g., Ricaud v. American Metal Co.,* 246 U.S. 304, 306, 38 S.Ct. 312, 62 L.Ed. 733 (1918) (order of military officer "in his capacity as a commanding officer" barred from adjudication by act of state doctrine); *Oetjen v. Central Leather Co.,* 246 U.S. 297, 303, 38 S.Ct. 309, 62 L.Ed. 726 (1918) (same; order of a "duly commissioned military commander ... when conducting active independent operations"); *Underhill v. Hernandez,* 168 U.S. 250, 254, 18 S.Ct. 83, 42 L.Ed. 456 (1897) (same; "[t]he acts complained of were the acts of a military commander representing the authority of the revolutionary party."). Thus, these cases establish that if a court determines the military officer acted on behalf of a recognized government and if the lawsuit turns on a challenge to the officer's order, then the act of state doctrine bars adjudication of the matter.

■ In this matter, plaintiff Roe IX does not challenge SPDC's right to draft civilians for military service or to issue official orders to members of its armed forces. *See* Oppo. at 2. Rather, plaintiff contends that Roe IX's commanding officer acted beyond the scope of his official duties and used his subordinate officers for his own financial gain. Thus, Roe IX would have the defendants conduct discovery into the internal operations of the Burma military chain-of-command to determine whether the officer's order to dig a drainage trench was an official order. Discovery of this nature, assuming it were possible, would entail deposing military officers about the details of their command structure and the authority of commanding officers. It would ultimately place the Court in the position of evaluating the legitimacy of orders directed to subordinate officers like Roe IX. *See United States v. Stanley,* 483 U.S. 669, 682–83, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) (explaining the inherent problems with conducting discovery and reviewing U.S. military decisions in the context of a *Bivens* action). The Court and the parties would be placed in an unseemly, if not, impossible position.

As noted above, the Supreme Court explained in *Dunhill* that the party claiming abstention under the act of state doctrine must show a "statute, decree, **order** or resolution" authorizing the challenged act as an official act. 425 U.S. at 695, 96 S.Ct. 1854 (emphasis added). Here, as alleged in the operative complaint, at the time plaintiff John Roe IX was ordered to dig a drainage trench, he was a member of the Burma military and was acting under the direction of his commanding officer. This order constitutes an official order by a military officer of the Burma armed forces and consequently, satisfies the burden of proof outlined in *Dunhill,* 425 U.S. at 695, 96 S.Ct. 1854.

■ Strong policy reasons also support this conclusion. The Supreme Court has repeatedly recognized that the special relationship between a commanding officer and his soldiers should not be subject to judicial review. In *Chappell v. Wallace,* 462 U.S. 296, 300, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), the Supreme Court concluded that "[c]ivilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and

their superior officers." This analysis echos throughout other Supreme Court precedent such as *Feres v. United States*, 340 U.S. 135, 141, 71 S.Ct. 153, 95 L.Ed. 152 (1950) and *United States v. Stanley*, 483 U.S. 669, 682–83, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987). Given that United States courts rarely, if ever, entertain suits challenging the propriety of orders from the United States Armed Forces, the Court is not persuaded that it should undertake such an inquiry with respect to a foreign military.

### 3. *Sabbatino* Factors

 As noted above, where the policies underlying the doctrine militate against its application, the act of state doctrine should not apply, even to claims that a foreign government's actions are or were invalid. *Kirkpatrick*, 493 U.S. at 409, 110 S.Ct. 701 ("Sometimes, even though the validity of the act of a foreign sovereign within its own territory is called into question, the policies underlying the act of state doctrine may not justify its application.").

### a. International Consensus

 In determining whether the doctrine bars judicial review, one factor to be considered is "the degree of international consensus regarding an activity." *Liu*, 892 F.2d at 1433. The doctrine should not be applied so as to

> totally emasculate the purpose and effectiveness of the Foreign Sovereign Immunities Act by permitting a foreign state to reimpose the so recently supplanted framework of sovereign immunity, as defined prior to the Act, through the back door, under the guise of the act of state doctrine.

*Liu*, 892 F.2d at 1432 (internal quotation marks omitted).

Here, plaintiff's complaint alleges that he was ordered to participate in a civilian construction project while on active military duty and that he was not compensated for his labor as promised by his commanding officer. Although plaintiff asks the Court to convert this motion to a summary judgment motion, the Court declines to do so. A review of Roe IX's supplemental declaration only confirms the factual allegations set forth in the Third Amended Complaint. His declaration does not add any information which suggests that discovery is warranted before resolving the merits of defendant's motion.

 Roe IX's allegations that he was ordered to work on civilian construction without compensation for such work, while a member of the Burma armed forces, does not constitute a violation of international law. As the Ninth Circuit has noted in a string of cases with respect to the U.S. military, "conscription, for military service or civilian work in lieu thereof does not constitute involuntary servitude." *United States v. Gidmark*, 440 F.2d 773, 774 (9th Cir.1971); *Klubnikin v. United States*, 227 F.2d 87, 90 (9th Cir. 1955) (rejecting plaintiff's argument that performing civilian service for a charitable institution in lieu of military service was unconstitutional); *Badger v. United States*, 322 F.2d 902, 908 (9th Cir.1963) (same); *Howze v. United States*, 272 F.2d 146 (9th Cir.1959) (government has the power to enforce "civilian labor draft" even during peacetime); *see also, Butler v. Perry*, 240 U.S. 328, 332–33, 36 S.Ct. 258, 60 L.Ed. 672 (1915) (upholding state law that requires citizens to perform mandatory civilian labor building roads as constitutional because such work is traditionally required by governments).

Although defendant is limited in the type of evidence it may offer in support of its motion, the Court places great reliance on the fact that requiring military officers to perform labor on civilian public works projects does not violate United States law. Defendants correctly point out that the United States maintains its own Corps of Engineers to manage flood control projects. *See e.g.*, 10 U.S.C. § 3031(b)(5) and 33 U.S.C. § 701b. In light of this fact, the Court is hard pressed to conclude that Roe

IX has properly alleged a violation of international law.[3]

Plaintiff's arguments do not persuade the Court to conclude otherwise. Roe IX relies on the Court's previous ruling with respect to civilian plaintiffs and asks the Court to extend its reasoning to a military officer. The Court declines to extend its prior order to the unique factual circumstances presented by Roe IX. In light of strong evidence that the SPDC military did not violate international law when it ordered Roe IX to dig a trench as part of his military duties, this factor weighs in favor of applying the act of state doctrine.

### b. Sensitivity of National Nerves

■ *Sabbatino* also cautions courts to consider that where the impact on foreign relations of the international issues presented is small, the justification for application of the act of state doctrine is commensurately weak. *Sabbatino*, 376 U.S. at 428, 84 S.Ct. 923. Here, plaintiff Roe IX's allegations raise unique factual issues arising from his duties as a military officer.

■ Unocal correctly observes that Roe IX's allegations most likely would touch national nerves. Ironically, Roe IX could never bring these same claims against the United States if he were a member of the United States Armed Forces. An American soldier cannot bring a tort claim or civil rights action for injuries arising out of or during the course of activity incident to service. *See e.g., United States v. Stanley*, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) (soldier given LSD without his consent cannot sue for injuries), *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (holding that military personnel may not file a civil action to recover damages from a superior officer for alleged constitutional violations); *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) (holding U.S. Government not liable under the Federal Tort Claims Act for injuries to military personnel arising out of or during the course of activity incident to service).

Given the pronounced policy against judicial review of these type of claims in the United States, it would be highly presumptuous of the Court to adjudicate Roe IX's claims arising from foreign military service. In *Friedar v. Government of Israel*, 614 F.Supp. 395 (S.D.N.Y.1985), the plaintiff was injured while serving in the Israeli army and filed a civil damage action against the Israeli government in federal court. The district court dismissed his claims in light of the act of state doctrine because it refused to review the Israeli government's internal administrative decisions. *Friedar*, 614 F.Supp. at 396. In particular, the district court concluded it could not review the claim when the identical activity by the United States government would not be subject to judicial review. *Id.* at 399. The reasoning set forth in the *Friedar* opinion applies equally to the instant matter.

Accordingly, this factor also weighs in favor of applying the act of state doctrine.

### c. Whether Government at Issue Still Exists

The final factor set out in *Sabbatino*, whether the government is allegedly responsible for the challenged acts is still in existence, also supports application of the doctrine. Here, SLORC or the SPDC remains in existence and is the current government of Burma.

### d. Public Interest

Although *Sabbatino* did not list additional considerations in its balancing test, the Ninth Circuit has included an inquiry into

---

**3.** The Court notes that conscription into military service does not violate international norms. Here, however, plaintiff voluntarily joined the military, eliminating any arguments with respect to involuntary service. As a consequence, plaintiff's allegations must necessarily be analyzed separately from the rest of the Roe plaintiffs because he was an active member of the military when SPDC military officers allegedly forced him to perform civilian labor. He stands apart from the other civilian plaintiffs who claim allegations of forced labor.

"whether the foreign state was acting in the public interest." *Liu*, 892 F.2d at 1432. Here, public policy suggests that military forces may undertake civilian labor projects to improve infrastructure, to stabilize domestic commercial activity, or to assist in the utilization of Burmese natural resources. The United States, itself, has promoted this type of activity in the past and continues to do so today.

Taking all of the factors together, the balance weighs in favor of invoking the act of state doctrine to bar plaintiff Roe IX's claims of forced labor.

## IV.

### *Conclusion*

Accordingly, the Court concludes that the act of state doctrine applies to the military order given to plaintiff Roe IX. Plaintiff Roe IX's allegations turn on the effect of an official act by an authorized representative of a foreign sovereign. An application of the *Sabbatino* factors also confirms the propriety of applying the act of state doctrine to bar plaintiff Roe IX's claims. As a consequence, defendant's motion to dismiss plaintiff John Roe IX is **GRANTED** without leave to amend.

**IT IS SO ORDERED.**